Filed 7/2/24  P. v. Corona CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSE CORONA,<br><br>Defendant and Appellant. | F085301<br><br>(Super. Ct. No. VCF257957C)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

Christopher Lionel Haberman for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

In 2011, Jose Corona (appellant) pleaded no contest to cultivating marijuana (Health & Saf. Code, § 11358) pursuant to a negotiated plea agreement. Eleven years later, he filed a motion to vacate his conviction pursuant to Penal Code section 1473.7, subdivision (a)(1),[1] alleging he did not meaningfully understand the adverse immigration consequences of his plea. Specifically, appellant claimed he was unaware that cultivating marijuana constitutes an "aggravated felony" under federal immigration law (8 U.S.C. § 1101(a)(43)), rendering him conclusively deportable and subject to permanent exclusion from the United States. The trial court denied the motion, finding appellant failed to show he did not understand the consequences of his plea or that he was prejudiced as a result.

On appeal, we find appellant met his burden of showing he did not meaningfully understand the full adverse immigration consequences of his plea, and that there is a reasonable probability he would not have entered the plea had he understood those consequences. We reverse, and we remand the matter for the trial court to vacate appellant's conviction and allow him to withdraw his plea.

**BACKGROUND**

**I.      Circumstances of Appellant's Arrest.**

On September 19, 2011, Tulare County Sheriff's deputies executed a search warrant on two properties in rural Tulare County. Numerous subjects were located on the properties and detained. Deputies discovered multiple grow sites throughout the properties, including 1,482 marijuana plants, and hundreds of pounds of fully and partially processed marijuana.

Appellant, then age 19, was found on the second floor of a residence on one of the properties. When contacted, appellant was sitting on a bed and "frantically trying to get

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

his shoes on." During an interview with deputies, appellant stated that the prior weekend, Adan Sierra, his 42-year-old relative, invited him to come to Tulare County to trim marijuana. Sierra told appellant he would be paid "a little something." Appellant trimmed marijuana inside of a barn and slept there. He admitted he knew it was illegal to touch or grow marijuana. He believed the marijuana was being sold to "drug dealers," and stated that Sierra sold marijuana to dispensaries in the Los Angeles area.

## II. Court Proceedings and Plea Hearing.

The Tulare County District Attorney's Office filed a criminal complaint charging appellant, Sierra, and 11 other defendants with offenses related to the marijuana grow. Appellant was charged with possession of marijuana for sale (Health & Saf. Code, § 11359; count 1) and cultivating marijuana (Health & Saf. Code, § 11358; count 2).

Appellant was arraigned on the criminal complaint on September 21, 2011. On October 19, 2011, at a "Prelim Setting" hearing, appellant pleaded no contest to cultivating marijuana. Pursuant to the terms of the negotiated plea agreement, he was placed on three years of probation and ordered to serve 210 days in the county jail. The possession of marijuana for sale charge was dismissed.

Appellant was in custody at the plea hearing. He was represented at the plea hearing by court-appointed attorney Ken Bovetti.[2] He was also assisted by a Spanish language interpreter. The plea hearing occurred simultaneously with eight other defendants, who also resolved their cases pursuant to a negotiated plea agreement.

Prior to appellant entering his plea, the court gave the following admonition: "As to each of you, if you are not a citizen of the United States, your plea will result in your being deported from the United States, excluded from admission to the United States, or denied naturalization as a United States citizen." When asked by the court if he understood the admonition, appellant responded, "Yes." The court then asked plea

---

[2] Bovetti was deceased by the time appellant filed the instant motion in 2022.

counsel if he had advised his client "of the immigration consequences." Plea counsel responded, "Yes."[3]

## III. Appellant Files a Section 1473.7 Motion to Vacate the Plea.

### A. Appellant's motion.

On October 10, 2022, appellant filed a motion to vacate his conviction pursuant to section 1473.7, subdivision (a)(1). In support, appellant submitted his own declaration, a declaration from his immigration attorney, letters in support from family members, and other documents demonstrating his extensive ties to the United States.

#### 1. *Appellant's ties to the United States.*

Appellant is an undocumented alien who has lived in the United States almost his entire life. He was born in Mexico in 1992. He was brought into the United States when he was six months old. He has resided in the United States ever since and attended school here. He has four siblings who live in the United States, two of whom are United States citizens.

Prior to his arrest, appellant was living with his uncle in the Los Angeles area. He worked in landscaping to help pay rent and cover his family's expenses. His parents were living in Mexico, but his siblings, uncles, and aunts lived in the United States.

In 2019, appellant married his wife, a United States citizen. They have a six-year-old son together. His wife also has a daughter from a previous relationship that he cares for as his own.

#### 2. *Appellant's declaration.*

Appellant declared he was 19 years old at the time of his plea and had no knowledge of the legal system. He pleaded no contest to cultivating marijuana because plea counsel advised him to do so. Prior to entering his plea, he informed plea counsel of

---

[3] There is no waiver and plea form in the record. Nothing in the transcript of the plea hearing suggests one was used.

his immigration status. Plea counsel never spoke with appellant "in depth" about potential immigration consequences or discussed the possibility of negotiating an immigration-safe plea bargain. Plea counsel also never stated he had consulted an immigration attorney or recommended appellant do so. Nonetheless, appellant placed "complete trust" in plea counsel and believed he was providing him with all the pertinent information he would need to decide whether to accept the plea deal.

Appellant claimed that when he entered his plea, he did not know that cultivating marijuana is an aggravated felony under federal immigration law that would render him presumptively deportable. He mistakenly believed that despite his conviction he would be able to adjust his immigration status because he had lived in the United States for almost his whole life. His immigration attorney informed him that due to his conviction, he is statutorily barred from applying for immigration benefits, and his removal from the United States is certain.

While he was in custody, appellant was never contacted by immigration officials. After he served his jail sentence, he was released without receiving an immigration hold or being deported.

Appellant declared that because almost his entire family was in the United States, if he had understood the full adverse immigration consequences of his plea, he never would have accepted the plea offer. Instead, he would have pursued an immigration-safe plea deal, or gone to trial if necessary.

Appellant acknowledged he heard the trial court mention immigration consequences during the plea hearing but interpreted the admonition "as a general warning provided to all defendants." Plea counsel had encouraged him to accept the deal, and he did not think plea counsel would advise him to accept a resolution with such severe immigration consequences.

Appellant stated he is the primary provider of support for his family, and therefore his deportation would cause severe hardship. His family would be separated because his

wife and child are United States citizens and would not be able to live with him in Mexico.  He hopes to become a permanent resident and eventually a United States citizen.

### 3. *Immigration attorney's declaration.*

Fabian C. Serrato, an immigration and criminal defense attorney, declared that in March 2022, appellant consulted with him to determine his eligibility for immigration benefits through his United States citizen wife.[4]  Prior to speaking with Serrato, appellant did not realize that his cultivating marijuana conviction constitutes an "aggravated felony" under federal immigration law.  (See *United States v. Reveles-Espinoza* (9th Cir. 2008) 522 F.3d 1044, 1047.)  Due to his conviction, he is "deportable, inadmissible, and ineligible for immigration relief."

As the spouse of a United States citizen, appellant would ordinarily be able to obtain lawful residency through his wife.  If his conviction is vacated, he will be eligible for immigration benefits through his United States citizen spouse and become a lawful resident.  Three years after approval of his residency, he will be able to obtain citizenship through naturalization.

Serrato stated that as a specialist in immigration law, he regularly consults with criminal defense attorneys seeking advice on the immigration consequences of pleas and convictions.  Serrato declared that if he had been consulted on the plea offer in appellant's case, he would have recommended against appellant entering a plea to cultivating marijuana, given the severe immigration consequences of an aggravated felony conviction.  Instead, he would have recommended appellant plea to a different offense that does not carry the same consequences.

---

[4]     Serrato also represented appellant for the section 1473.7 motion to vacate in the trial court.

6.

**B.    Hearing on the section 1473.7 motion to vacate.**

*1.    Appellant's testimony.*

Appellant testified at the hearing on the motion.  He stated the only time he spoke with plea counsel was in court on the day he entered the plea.

According to appellant, plea counsel advised him to plead guilty to cultivating marijuana.  He told appellant there was a possibility that he would be deported but did not discuss potential immigration consequences further.  Plea counsel did not inform him that if he pleaded guilty, he would be rendered inadmissible or never be able to obtain lawful residency.

Appellant explained that when he entered his plea, he believed he would be deported because he was undocumented.  He had been told by other undocumented inmates that when they complete their custody time, they get deported.  However, he did not know that his plea would carry additional immigration consequences.

Appellant did not recall the court's admonition that his plea will result in his deportation, denial of naturalization, or exclusion from the United States.  He explained that at the time of the plea, he was nervous and distracted because he believed he was going to be deported.

After appellant completed his jail sentence, he was released from custody, went home, and reported to probation.  He was never contacted by immigration officials.

*2.    Arguments of counsel.*

Appellant's counsel argued appellant testified credibly that plea counsel never advised him of the adverse immigration consequences of his plea.  He was never told that he would be rendered inadmissible and never able to come back to the United States. Although the court admonished appellant of potential immigration consequences in accordance with section 1016.5, the admonition did not relieve plea counsel of his obligation to properly advise appellant of the severe immigration consequences he would face because of his plea.

7.

The prosecutor contended the record showed appellant was advised of potential immigration consequences by the court, and plea counsel acknowledged that he had advised appellant of adverse immigration consequences. The prosecutor argued that appellant's testimony was not credible, because he had no memory of the court advising him of the immigration consequences, yet claimed to have a clear memory of what plea counsel did and did not tell him. The prosecutor also noted that appellant testified he was aware he would face adverse immigration consequences because he had been advised by other inmates.

### 3.    *Trial court's ruling*.

The trial court denied the motion. It found appellant failed to demonstrate he did not meaningfully understand the adverse immigration consequences of his plea. It noted the plea transcript showed appellant was advised that his plea would cause him to be deported, denied naturalization, or excluded from the country. It also concluded appellant's "bare assertion" that plea counsel did not discuss the immigration consequences with him was not supported by any independent corroborating evidence.

The court found appellant's "self-serving declaration" was "inherently suspect" because the record showed plea counsel told the court he had discussed the immigration consequences with appellant. In addition, it found appellant's testimony indicated he was aware of adverse immigration consequences at the time of his plea.

The court also concluded appellant failed to establish prejudice. It acknowledged appellant currently has close ties to the United States, but that the ties were not as strong at the time of the plea. Based on the strong evidence of guilt, and because appellant received a benefit from his plea bargain, the court concluded there was no reasonable probability appellant would have rejected the plea regardless of how he was advised.

8.

## DISCUSSION

**I.** **Appellant Demonstrated he did not Meaningfully Understand the Adverse Immigration Consequences of his Plea, and that he Would Have Rejected the Plea had he Correctly Understood Those Consequences. We Reverse the Trial Court's Order Denying his Section 1473.7, Subdivision (a)(1) Motion to Vacate.**

### A. Legal background – Motion to vacate pursuant to section 1473.7, subdivision (a)(1).

In 2016, the Legislature enacted section 1473.7, subdivision (a)(1), to create a mechanism for relief for defendants "who were unaware of the immigration consequences posed by a plea entered many years earlier." (*People v. Vivar* (2021) 11 Cal.5th 510, 523 (*Vivar*).) That provision states, in pertinent part:

> "(a) A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence [if] … : [¶] (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subd. (a)(1).)

Thus, to obtain relief, a defendant must first demonstrate error, specifically, "that he did not meaningfully understand the immigration consequences of his plea." (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).) Next, the defendant must establish prejudice, meaning "a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar*, *supra*, 11 Cal.5th at p. 529.) In short, the defendant must show that error occurred, and that the error resulted in prejudice.

The defendant must establish the existence of grounds for relief by a preponderance of the evidence. (§ 1473.7, subd. (e)(1); see *Vivar*, *supra*, 11 Cal.5th at p. 517.) "[T]he moving party shall also establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an

application for an immigration benefit, lawful status, or naturalization." (§ 1473.7, subd. (e)(1).) If the motion is granted, "the court shall allow the moving party to withdraw the plea." (§ 1473.7, subd. (e)(3).)

A defendant's assertions regarding his or her state of mind at the time of the plea must be corroborated with objective evidence. (*Espinoza, supra,* 14 Cal.5th at p. 321.) This may include "facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Ibid*.) However, a defendant is not required to submit contemporaneous documentation, and "no specific kind of evidence is a prerequisite to relief." (*Id.* at p. 325.) Instead, the court must consider the totality of the circumstances, which "necessarily involves [a] case-by-case examination of the record." (*Ibid*.)

We apply independent review to evaluate the denial of a motion to vacate under section 1473.7, subdivision (a)(1). (*Vivar*, *supra*, 11 Cal.5th at p. 527.) Under independent review, we exercise our " 'independent judgment to determine whether the facts satisfy the rule of law.' " (*Ibid.*) But we "give deference to the trial court's factual determinations if they are based on ' " 'the credibility of witnesses the [superior court] heard and observed.' " ' " (*Espinoza*, *supra*, 14 Cal.5th at p. 320.)

### B. Appellant did not meaningfully understand the adverse immigration consequences of his plea.

Appellant claims he never understood and was never advised of the full adverse immigration consequences of his plea, which constitutes an aggravated felony under federal immigration law. Respondent counters that this claim is contradicted by the record, including plea counsel's affirmation that he advised appellant of his immigration consequences, and the trial court's section 1016.5 advisement. We agree with appellant. Objective evidence shows appellant was unaware of these immigration consequences and was not properly advised by counsel, and the section 1016.5 advisement was insufficient to remedy appellant's misunderstanding.

### 1. Applicable legal standards.

To establish error, the defendant must show by a preponderance of the evidence that he or she "did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea." (*People v. Mejia* (2019) 36 Cal.App.5th 859, 862 (*Mejia*).) While errors of counsel may be relevant in determining whether the defendant understood the adverse immigration consequences, the defendant is not required to establish counsel was ineffective. (§ 1473.7, subd. (a)(1); *People v. Alatorre* (2021) 70 Cal.App.5th 747, 769 (*Alatorre*); *Mejia*, at p. 866.) Rather, the focus of the inquiry is the moving party's subjective mindset, "and what he or she understood— or didn't understand—at the time the plea was taken." (*Mejia*, at p. 866; see *Alatorre*, at p. 769.) In determining whether such error occurred, the court must consider the " 'totality of the circumstances,' which necessarily involves case-by-case examination of the record [citation], and no specific kind of evidence is a prerequisite to relief." (*Espinoza*, *supra*, 14 Cal.5th at p. 325.)

### 2. Appellant's adverse immigration consequences.

We begin by considering the actual and potential adverse immigration consequences of appellant's plea. The Immigration and Nationality Act (8 U.S.C. § 1101, et seq.) defines certain criminal offenses by category and sets forth the immigration consequences that attach to each category. Under this framework, cultivating marijuana (Health & Saf. Code, § 11358) constitutes an "aggravated felony."[5] (8 U.S.C. § 1101(a)(43); *United States v. Reveles-Espinoza*, *supra*, 522 F.3d 1044, 1047.)

---

[5] At the time appellant entered his plea, cultivating marijuana was a felony offense under all circumstances. (Former Health & Saf. Code, § 11358.) Currently, cultivating marijuana is a misdemeanor offense unless the offender has a prior "super strike" conviction, is a section 290 registrant, has two or more prior convictions for cultivating marijuana, or the offense resulted in violations of certain environmental laws. (Health & Saf. Code, § 11358, subd. (d).) However, a prior felony conviction for cultivating marijuana is not eligible for reduction to a misdemeanor pursuant to section 1170.18 (Proposition 47). (*People v. Descano* (2016) 245 Cal.App.4th 175, 179.)

A noncitizen convicted of an aggravated felony is conclusively presumed deportable and is subject to mandatory deportation and permanent exclusion from the United States. (8 U.S.C. §§ 1227(a)(2)(A)(iii), 1228(c); *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1174 (*Curiel*); *People v. Carrillo* (2024) 101 Cal.App.5th 1, 15; *People v. Villalba* (2023) 89 Cal.App.5th 659, 666.) The noncitizen is also "ineligible for cancellation of removal, a form of discretionary relief allowing some deportable aliens to remain in the country." (*Sessions v. Dimaya* (2018) 584 U.S. 148, 153; see 8 U.S.C. § 1229b(a)(3), (b)(1)(C).) In addition, a noncitizen convicted of an aggravated felony has "greatly reduced procedural rights in detention and removal proceedings." (Kesselbrenner & Rosenberg, Immigration Law and Crimes (Summer Ed. 2023) § 7:22, p. 553, fns. omitted.)

As explained in the declaration of appellant's immigration attorney, appellant would normally be eligible to apply for and obtain lawful residence because his spouse is a United States citizen. (See 8 U.S.C. § 1154.) However, due to his conviction of an aggravated felony, which renders him inadmissible, he is ineligible for this immigration benefit. (See 8 U.S.C. § 1361.)

Despite appellant's conviction, and for reasons that are unclear from the record, appellant was released from custody after serving his jail sentence without being deported. Nonetheless, given the consequences of his aggravated felony conviction, should appellant come into contact with immigration officials, his "removal is a virtual certainty," even though he has resided in the United States since he was an infant. (*Sessions v. Dimaya, supra*, 584 U.S. at p. 153.) Once removed, he would have no available avenue for lawfully reentering the country. Accordingly, appellant has established that his conviction "is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (§ 1473.7, subd. (e)(1).)

### 3. The circumstances of the plea demonstrate appellant did not meaningfully understand the full adverse immigration consequences of his plea.

In *Padilla v. Kentucky*, the United States Supreme Court held that defense counsel has a Sixth Amendment obligation to advise a criminal defendant of the adverse immigration consequences of a plea. (*Padilla v. Kentucky* (2010) 559 U.S. 356, 366 (*Padilla*).) Fulfillment of this obligation is critical, as "a trial court generally has no duty to advise defendants of collateral consequences of a plea, including immigration consequences." (*People v. Patterson* (2017) 2 Cal.5th 885, 897 (*Patterson*).) Under the Sixth Amendment, criminal defendants "are entitled so to rely and to expect" competent representation. (*In re Resendiz* (2001) 25 Cal.4th 230, 241 (lead opn. of Werdegar, J.), abrogated on another ground in *Padilla*, *supra*, 559 U.S. at p. 370.) Accordingly, in the plea bargaining process, a criminal defendant can expect counsel " 'to make an informed evaluation of a proffered plea bargain,' " and rely on counsel's " 'independent evaluation of the charges, applicable law, and evidence, and of the risks and probable outcome of trial.' " (*Id.* at p. 240.)

The only indication in the record that plea counsel advised appellant of adverse immigration consequences was his affirmation to the court during the plea colloquy. Specifically, he answered "yes" when the court asked him if he had advised appellant "of the immigration consequences." Plea counsel was deceased by the time the motion to vacate was filed, and the parties did not provide other evidence from him, such as declarations or notes from his files. Nonetheless, the trial court relied on the affirmation of plea counsel in denying the motion to vacate, finding it rendered appellant's contrary declaration "inherently suspect."

However, *Espinoza* makes clear that we may not conclusively presume that plea counsel complied with his constitutional obligations under *Padilla* because there was no additional evidence from plea counsel. (*Espinoza*, *supra*, 14 Cal.5th at pp. 324–325.) In *Espinoza*, the high court criticized the Court of Appeal for questioning the credibility of

the moving party because he did not submit evidence from plea counsel, which both parties were unable to contact. (*Ibid.*) The high court explained that a defendant is not required to provide a declaration from plea counsel or other contemporaneous evidence from the time of the plea. (*Id.* at p. 325.) This is because this type of evidence " 'will not be available in most cases—especially where defendants do not learn about the immigration consequences of their pleas until years or decades later.' " (*Ibid.*)

Here, as in *Espinoza*, plea counsel was deceased, and thus unreachable when appellant filed the motion to vacate. Thus, there was no evidence from plea counsel that would allow the finder of fact to further evaluate his affirmation that he advised appellant "of the immigration consequences." In the absence of such evidence, we cannot assume that plea counsel must have fully advised appellant of all the actual and potential adverse immigration consequences of his plea. As such, we reject the trial court's finding that appellant's declaration necessarily lacked credibility because it was contradicted by plea counsel's affirmation. Instead, in accordance with *Espinoza*, we must determine whether, based on the record in this case, the totality of the circumstances shows appellant has met his burden. (*Espinoza*, *supra*, 14 Cal.5th at p. 325.)

Considering the evidence that is in the record, plea counsel's affirmation does not persuade us that he fully advised appellant of the adverse immigration consequences. The affirmation itself was generic and vague. Plea counsel only affirmed that he advised appellant "of the immigration consequences," without any additional detail. Moreover, contrary to the trial court's finding, this affirmation does not conflict with appellant's declaration. Rather, it is consistent with appellant's claim that plea counsel did not speak with him "in depth" about his immigration consequences, and his testimony that plea counsel only told him there was a possibility he would be deported if he entered the plea. Thus, the evidence suggests that plea counsel's affirmation was truthful to the extent that he did discuss some immigration consequences with appellant. But it does not

14.

affirmatively show plea counsel complied with his obligation under *Padilla* to accurately advise appellant of all actual and potential adverse immigration consequences.

Other aspects of plea counsel's representation corroborate appellant's assertion he was not fully advised. Appellant was arraigned on the criminal complaint on September 21, 2011, and entered his plea less than a month later. Nothing in the record contradicts appellant's claim that the first and only time he spoke with plea counsel was in court at the plea hearing. Nor is there any indication plea counsel attempted to negotiate a plea agreement involving a different charge that carries less severe immigration consequences. Moreover, plea counsel did not seek a continuance to conduct further investigation regarding immigration consequences resulting from the plea, which a trial court is required to grant pursuant to section 1016.5, subdivision (b).

At the time appellant entered his plea, he was 19 years old, with no prior experience in the criminal justice system. Given his inexperience and the complex nature of federal immigration law, it is easy to see how he could have misunderstood the adverse immigration consequences of the plea, particularly without thorough advice from counsel. (See *Padilla*, *supra*, 559 U.S. at p. 369 ["Immigration law can be complex, and it is a legal specialty of its own."].) The distinction between immigration consequences stemming from his undocumented status, and current and future immigration consequences stemming from a criminal conviction, is complex and nuanced, especially for a non-lawyer. Moreover, while cultivation of marijuana was a felony offense, it was not an offense involving violent or egregious conduct that any person would reasonably expect carries the severe and permanent adverse immigration consequences of an aggravated felony.

In this vein, we reject respondent's argument that appellant understood his immigration consequences because he admitted he knew he would be deported. Appellant testified he believed he would be deported because he is undocumented, not because of his plea. But even assuming he believed he would be deported because of his

plea, the consequences of suffering an aggravated felony conviction extend well beyond deportation. To obtain relief under section 1473.7, a defendant need only show that the challenged conviction is causing or has the potential to cause "removal *or* the denial of an application for an immigration benefit, lawful status, or naturalization." (§ 1473.7, subd. (e)(1), italics added.) Thus, whether appellant believed he would be deported as a result of his undocumented status or because of the plea is not dispositive, because the plea resulted in additional, more severe adverse immigration consequences.

Respondent also suggests that we should defer to the trial court's "implied finding" that appellant lacked credibility because he testified that he believed he would be deported but stated at one point in his declaration that he "would never have willingly and knowingly risked deportation." Initially, we observe that the trial court found that appellant's declaration was "inherently suspect" because it conflicted with plea counsel's affirmation that he advised appellant of his immigration consequences. While the court noted appellant's testimony "indicate[d] that he was aware of the immigration consequences at the time of his plea," it did not find appellant lacked credibility because of the purported contradiction.

To the extent the trial court did make such an implied finding, under the applicable independent review standard, we only give deference where the factual finding is "based on the trial court's personal observations of witnesses." (*Vivar*, *supra*, 11 Cal.5th at pp. 527–528.) Although the trial court personally observed appellant's testimony, we are in the same position as the trial court to determine whether appellant testified to a fact that conflicted with his prior declaration. Based on our review of the declaration, no contradiction occurred. When appellant stated he would not risk deportation, he did so in the context of explaining that he would not have entered the plea if he had known he "would never be able to apply for some form of relief from deportation, be subject to inadmissibility, and ineligible to apply for cancellation of removal." Accordingly, an

implied finding appellant lacked credibility on this ground would have not been supported by the record.

We also find appellant's conduct after his plea indicates he did not understand its adverse immigration consequences. (See *Alatorre*, *supra*, 70 Cal.App.5th at pp. 769–770.) After appellant was released from custody, he went on to marry a United States citizen and start a family. According to his immigration attorney, he was not aware of the adverse immigration consequences of the plea until he sought consultation on obtaining immigration benefits through his citizen spouse. It stands to reason that if appellant was aware that his conviction rendered him ineligible for such benefits and subject to permanent exclusion from the country, he would not have taken the time, effort, and resources necessary to consult with an attorney. (See *Curiel*, *supra*, 92 Cal.App.5th at p. 1177 [postplea consultation with attorney to apply for citizenship showed defendant did not understand immigration consequences of aggravated felony conviction]; *Alatorre*, *supra*, 70 Cal.App.5th at pp. 769–770 [postplea efforts to become a naturalized citizen showed the defendant did not understand immigration consequences].)

In sum, appellant's declaration, the nature of his case, and the circumstances of his plea constitute compelling, objective evidence that appellant did not meaningfully understand the full adverse immigration consequences of his plea. While plea counsel may have advised appellant there was a possibility he would be deported, the consequences of being convicted of an aggravated felony were far more severe. While we need not determine whether plea counsel was ineffective, we conclude the totality of the record demonstrates he failed to impart to appellant a full understanding of the actual and potential adverse immigration consequences of entering into the plea agreement.

#### 4. The trial court's section 1016.5 advisement does not establish appellant meaningfully understood the adverse immigration consequences of the plea.

Other than plea counsel's affirmation, the only other evidence in the record that appellant was advised of the adverse immigration consequences of his plea is the trial court's advisement. In accordance with section 1016.5, the trial court advised appellant that if he is not a citizen of the United States, the plea "will result in your being deported from the United States, excluded from admission to the United States, or denied naturalization as a United States citizen." The advisement tracked the language of section 1016.5, subdivision (a), except the trial court substituted "may" with "will." (See *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 207 [advisement need not track exact statutory language].) Appellant also verbally acknowledged that he understood the advisement.

We recognize that the presence of a section 1016.5 advisement is relevant evidence that the moving party understood the adverse immigration consequences. But it "is not a categorical bar to relief." (*People v. Lopez* (2021) 66 Cal.App.5th 561, 577 (*Lopez*).) In fact, the trial court's failure to give a section 1016.5 advisement is a separate ground for vacating a plea. (§ 1016.5, subd. (b); see *Patterson*, *supra*, 2 Cal.5th at p. 897.) A motion under section 1473.7 entails a broader inquiry into whether the moving party meaningfully understood all actual and potential adverse immigration consequences of the conviction or sentence. (§ 1473.7, subd. (a)(1).)

In *Patterson*, our high court held that a section 1016.5 advisement does not "serve as a categorical bar to the withdrawal of a guilty plea on grounds of mistake or ignorance" under section 1018. (*Patterson*, *supra*, 2 Cal.5th at p. 896.) Because defense counsel is charged with the crucial role of advising a client of the specific adverse immigration consequences of a particular plea, "[t]he generic advisement under section 1016.5 is not designed, nor does it operate, as a substitute for such advice." (*Patterson*, *supra*, 2 Cal.5th at p. 898.) Rather, the advisement is aimed at encouraging a defendant

18.

"to seek advice from counsel about the actual risk of adverse immigration consequences." (*Id.* at p. 896.)

Following *Patterson*, the Supreme Court concluded in *Vivar* and *Espinoza* that the defendants in those cases, each of whom received the section 1016.5 advisements, did not meaningfully understand the adverse immigration consequences of their pleas. (*Vivar, supra*, 11 Cal.5th at p. 519; *Espinoza, supra*, 14 Cal.5th at p. 320.) Several Courts of Appeal have also held that the more strongly worded section 1016.5 advisement that the defendant "will" suffer adverse immigration consequences does not necessarily bar relief. (*Lopez, supra*, 66 Cal.App.5th at p. 577; *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 906; see *In re Hernandez* (2019) 33 Cal.App.5th 530, 545.)

The instant matter reflects why the section 1016.5 advisement is not a substitute for the advice of counsel. Specifically, the advisement did not fully explain the severe adverse immigration consequences of appellant's plea. By suffering an aggravated felony conviction, appellant was not just subject to deportation and exclusion from the United States. Rather, because of his plea, he has been deemed "conclusively deportable" without any available form of discretionary relief, and permanently excluded from the country.

Appellant testified that he did not recall the trial court's section 1016.5 advisement, but stated in his declaration he heard the court mention immigration consequences. But even assuming appellant heard the advisement in full, for the reasons explained above, we do not find it to be compelling evidence appellant fully understood his immigration consequences. Appellant reasonably relied on plea counsel to explain the consequences of his plea, and objective evidence supports the conclusion that plea counsel did not provide the specific, thorough, and clear advisement necessary for appellant to have a meaningful understanding of those consequences.

Appellant corroborated with objective evidence his claim that he was unaware of the severe immigration consequences of being convicted of an aggravated felony under

19.

federal immigration law. He has also shown plea counsel did not fully and adequately advise him of the adverse immigration consequences, and that the trial court's section 1016.5 advisement was an inadequate substitute. Considering the totality of the circumstances and based on the record before this court, our independent review reveals appellant established by a preponderance of the evidence that he did not meaningfully understand or knowingly accept the actual or potential adverse immigration consequences of his plea.

### C. Appellant was prejudiced by his misunderstanding of the adverse immigration consequences of the plea.

Appellant contends that had he known the full adverse immigration consequences of his plea, he would not have pleaded no contest to cultivating marijuana. We agree. Appellant's extensive ties to the United States demonstrate immigration consequences were of paramount importance to him. Given the circumstances of the case, there is reason to believe the prosecution would have been willing to make an alternative, immigration-safe plea offer. Accordingly, it is reasonably probable appellant would not have accepted the plea agreement if he meaningfully understood its adverse immigration consequences.

#### 1. *Applicable legal standards.*

"[P]rejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar*, *supra*, 11 Cal.5th at p. 529.) A reasonable probability " ' "does not mean 'more likely than not,' but merely 'probability sufficient to undermine confidence in the outcome.' " ' " (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 324.)

When courts assess whether a defendant has shown such a reasonable probability, they consider the totality of the circumstances. (*Vivar*, *supra*, 11 Cal.5th at p. 529.) "Factors particularly relevant to this inquiry include the defendant's ties to the United

20.

States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Id.* at pp. 529–530.) "Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial. [Citation.] These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Espinoza*, *supra*, 14 Cal.5th at pp. 320–321.)

### 2. *Appellant's extensive ties to the United States corroborate his claim immigration consequences were his foremost concern at the time of his plea.*

"Ties to the United States are an important factor in evaluating prejudicial error under section 1473.7 because they shed light on a defendant's immigration priorities." (*Espinoza*, *supra*, 14 Cal.5th at p. 321.) When a longtime noncitizen resident faces criminal charges, "the most devastating consequence may not be a prison sentence, but their removal and exclusion from the United States." (*Vivar*, *supra*, 11 Cal.5th at p. 516.) Deep and long-standing ties therefore "support an inference that immigration consequences were of paramount concern at the time of the defendant's guilty plea." (*Espinoza*, *supra*, 14 Cal.5th at p. 323.)

In *Vivar*, the Supreme Court found the defendant's substantial ties to the United States were a significant factor in granting relief. (*Vivar*, *supra*, 11 Cal.5th at p. 530.) The defendant was brought to the United States at age six and remained here for 40 years. (*Ibid.*) He attended schools here, married a U.S. citizen, and had two children and two grandchildren, all of whom resided in California. (*Ibid.*) He had "virtually no ties to Mexico" and "found it 'difficult to function in Mexican society because people treat [him] like an outsider.'" (*Ibid.*)

Similarly, in *Espinoza,* the defendant came to the United States when he was 13 years old, and at the time of the plea, had lived in California for 23 years. (*Espinoza*, *supra*, 14 Cal.5th at p. 322.) His spouse and children were United States citizens, and he provided financial support for his family. (*Ibid*.) Much of his extended family also lived in the United States. (*Ibid.*) The court reasoned the defendant's ties to the United States "weigh in favor of finding that he would have considered immigration consequences to be of paramount concern in deciding whether to accept a plea agreement." (*Ibid.*)

Appellant's ties to the United States are no less significant. He was brought to the United States when he was six months old and has lived here ever since. All four of his siblings, two of which are United States citizens, and much of his extended family, reside here. He attended school in the United States, and at the time of his plea, was living with his uncle and working as a landscaper to help cover family expenses. As in *Espinoza*, " '[e]verything important in his life' at the time he entered his plea 'was in the United States.' " (*Espinoza*, *supra*, 14 Cal.5th at p. 322.)

After appellant was released from custody, he remained in the country. He married his wife, a United States citizen, fathered a child, and provides for his family. While these additional ties did not develop until after the plea, they "lend credence to [his] assertion that his community ties were important to him at the time of his plea." (*Espinoza*, *supra*, 14 Cal.5th at p. 323.)

The trial court acknowledged appellant currently has close ties to the United States, but stated that after hearing his testimony, "perhaps the ties were not so close at the time of his plea." While we agree that appellant's ties grew considerably after his release from custody, his ties at the time of the plea were still substantial. He was brought to the United States as an infant, lived here essentially his entire life, and his siblings and extended family were all living in the United States. His only apparent tie to Mexico, which was revealed during his testimony, was that his parents were living there at the time of his plea. While relevant, this fact does little to persuade us that appellant's

ties to the United States were anything but deep and longstanding when he entered his plea. Accordingly, we conclude appellant demonstrated significant ties to the United States, which supports the conclusion that appellant would not have entered the plea if he had known of the adverse immigration consequences.

### 3. The circumstances of appellant's case support his claim that he would not have accepted the plea agreement if he meaningfully understood its full adverse immigration consequences.

Having determined that immigration concerns were of paramount importance to appellant, we turn to "whether alternative, immigration-safe dispositions were available at the time of [his] plea." (*Espinoza*, *supra*, 14 Cal.5th at p. 323.)

Appellant's immigration attorney opined that he would have advised appellant to enter an "alternative plea" to avoid the immigration consequences of an aggravated felony conviction. In his briefing, appellant identified several possible alternative felony convictions, such as second degree burglary (§§ 459, 460, subd. (b)) and being an accessory to a felony after the fact (§ 32). (See *People v. West* (1970) 3 Cal.3d 595, 611–613 [a defendant may plead guilty or no contest to uncharged crimes so long as they are reasonably related to the offenses charged].) Under certain circumstances, conviction of these offenses may not carry the same adverse immigration consequences.[6] (See, e.g., 8 U.S.C. § 1101(a)(43)(G) [a burglary offense is an aggravated felony if term of imprisonment is at least one year]; *In re Batista-Hernandez* (B.I.A. 1997) 21 I. & N. Dec. 955, 956.)

---

[6] To be clear, we do not suggest appellant should necessarily seek one of the potential alternative dispositions identified here. We only note that the existence of such alternative dispositions supports appellant's claim there is a reasonable probability he would have rejected the instant plea. (See *Espinoza*, *supra*, 14 Cal.5th at p. 324.)

Appellant had no prior criminal history at the time of his plea.[7] His charges, while felonies, were relatively minor offenses, punishable by no more than a three-year prison term. (See former Health & Saf. Code, § 11358.) The evidence indicates appellant's role in the marijuana grow was also relatively minor. He was hired by an older relative to trim marijuana. There is nothing to suggest he was involved in the planning, organization, or management of the marijuana grow, or that he received direct proceeds from marijuana sales. The prosecution's plea bargain offer reflected this, allowing appellant to accept probation and a county jail sentence in lieu of prison. These factors strongly suggest the prosecution would have been willing to offer a plea to an alternative charge without adverse immigration consequences. (See *Espinoza*, *supra*, 14 Cal.5th at p. 324.)

In finding appellant was unlikely to have rejected the instant plea, the trial court relied on the strength of the evidence of appellant's guilt. We agree that this was a relevant consideration. (See *Espinoza*, *supra*, 14 Cal.5th at p. 323.) But given the above factors, especially the prosecution's offer to allow appellant to plead to one of two counts and avoid prison, we conclude it is reasonably probable the prosecution would have been willing to entertain an alternative, immigration-safe disposition.

Additionally, while we recognize appellant's chances of obtaining a not guilty verdict at trial were slim, we still find it reasonably probable appellant would have gone to trial if the prosecution were unwilling to offer an immigration-safe plea. Because avoiding adverse immigration consequences were of paramount importance to him, the prospect of facing some additional custody time was not meaningfully different from facing the same immigration consequences after serving a somewhat shorter sentence. Where the consequences of conviction after trial and by plea are "similarly dire, even the

---

[7] There is nothing in the record to suggest appellant has any subsequent criminal history.

24.

smallest chance of success at trial may look attractive." (*Lee v. United States* (2017) 582 U.S. 357, 367.)

Respondent argues that because appellant admitted he thought he was going to be deported, there is no reason to believe he would have been unwilling to accept the additional immigration consequences of an aggravated felony conviction. As we explained above, the record shows appellant believed he would be deported because of his undocumented status, not because of the plea. But even if he did believe that deportation was a direct consequence of the plea, the adverse immigration consequences of an aggravated felony extend well beyond mere deportation. The difference between facing deportation with a possible path back to lawful residency, and permanent exclusion from the country, are substantial. Appellant's extensive ties to the United States strongly support his claim that if he understood these severe adverse immigration consequences, he would not have accepted the plea agreement.

Based on the totality of the record, appellant has met his burden of demonstrating prejudice by a preponderance of the evidence. Considering the circumstances of appellant's case and his longstanding and extensive ties to the United States, we conclude it is reasonably probable appellant would have rejected the instant plea agreement had he correctly understood the adverse immigration consequences.

### D. We reverse the trial court's order denying the section 1473.7 motion to vacate.

Under the independent review standard, our review of the totality of the circumstances and the unique facts of this case reveals appellant demonstrated by a preponderance of the evidence that he was entitled to relief under section 1473.7, subdivision (a)(1). We therefore reverse the trial court's order and remand the matter to the trial court to enter an order granting appellant's motion to vacate his conviction.

**II.    We Need Not Address Appellant's Additional Claim Under the California Racial Justice Act of 2020.**

As an alternative ground for vacating the plea, appellant argues that the trial court's substitution of "may" for "will" in the section 1016.5 advisement violated the California Racial Justice Act of 2020 (§ 745).  He also requests that this court issue an order disallowing this practice generally.  However, because we have already concluded that appellant's plea must be vacated, we need not address this claim.

## DISPOSITION

The trial court's order denying appellant's section 1473.7, subdivision (a)(1) motion to vacate his plea and conviction is reversed.  The matter is remanded, and the trial court is directed to enter an order granting the motion, vacating the conviction, and allowing appellant to withdraw his plea.


LEVY, Acting P. J.

WE CONCUR:


DETJEN, J.


SMITH, J.